TFlUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHRIS LIMBERG ET AL.**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-15217** |
| **STARR INDEMNITY<br>& LIABILITY CO.,**<br>    **Defendant** | **SECTION: "E"(5)** |

### ORDER AND REASONS

Before the Court is Defendant Starr Indemnity & Liability Company's ("Starr") motion for partial summary judgment.[1] Starr seeks a judgment that Plaintiff Chris Limberg is not entitled to recover the amount written off by Plaintiff's medical providers who have already been paid by Starr under a workers' compensation policy.[2] Plaintiff opposes the motion.[3] For the reasons that follow, the motion is **GRANTED**.

### BACKGROUND

These are the undisputed facts relevant to this motion. On October 15, 2015, Plaintiff Chris Limberg was in an automobile accident with an underinsured motorist.[4] At the time of the accident, Plaintiff was operating a vehicle owned by his employer,

---

[1] R. Doc. 27. This motion only involves Plaintiff Chris Limberg's claims, and does not impact Plaintiff Diane Limberg's claim for loss of consortium.
[2] Starr provides workers' compensation coverage and uninsured/underinsured motorist coverage for Plaintiff's employer. Starr initially moved for summary judgment that (1) Plaintiff may not recover damages for medical expenses already paid by Starr under the workers' compensation policy and (2) Plaintiff is not able to recover the amount written off by his medical providers. R. Doc. 27-1 at 1. In Plaintiff's opposition, he concedes Starr is entitled to a credit for lost wage and medical benefits it has already paid him. R. Doc. 33 at 3-4.
[3] R. Doc. 33.
[4] R. Doc. 27-4 at ¶ 1; R. Doc. 40-1 at ¶ 1. It is not clear whether the motorist was underinsured or uninsured.

1

Gunite Express, LP ("Gunite"), and he was acting within the course and scope of his employment.[5] Plaintiff does not allege his employer was at fault.[6]

After the accident, Plaintiff initiated a workers' compensation ("WC") claim with Starr, which is Gunite's WC insurer as well as Gunite's uninsured/underinsured motorist ("UM") insurer.[7] Pursuant to the WC policy issued to Gunite, Starr paid for Plaintiff's medical care related to the accident[8] and also his indemnity benefits.[9] Plaintiff has now reached a lump sum settlement with Starr on his claim for indemnity benefits.[10] Limberg has not settled his WC claim for future medical expenses, and Starr continues to pay his medical expenses.[11]

Plaintiff filed a complaint in this Court on October 4, 2016 against Starr, seeking damages under the UM policy.[12] Chris Limberg claims damages for his past and future medical expenses, physical pain and suffering, mental pain and anguish, physical disability, loss of wages, loss of enjoyment of life, and loss of earning capacity.[13]

Starr now moves for summary judgment regarding the amount of damages Plaintiff Chris Limberg is entitled to recover under the UM policy.[14] Plaintiff filed an

---

[5] R. Doc. 27-4 at ¶ 1; R. Doc. 40-1 at ¶ 1.
[6] *See* R. Doc. 1.
[7] R. Doc. 27-4 at ¶ 2, 5; R. Doc. 40-1 at ¶ 2, 5.
[8] R. Doc. 27-4 at ¶ 3; R. Doc. 40-1 at ¶ 3.
[9] The parties dispute the period of time during which Plaintiff received indemnity benefits. R. Doc. 27-4 at ¶ 4; R. Doc. 40-1 at ¶ 4.
[10] It is undisputed that Plaintiff's indemnity claim was settled. R. Doc. 27-4 at ¶ 4. R. Doc. 40-1 at ¶ 4. Although the parties appear to dispute when the settlement occurred, the settlement agreement supplied by Plaintiff is dated February 9, 2017. R. Doc. 33-1 at 3. The settlement agreement provided that Plaintiff would receive a lump sum of $40,000 "to close in full and final settlement all issues of permanent partial disability, permanent total disability, vocational disability and vocational rehabilitation, as related to an injury occurring on or about 10.12.2015."[10] The agreement further provided, "Future medical services shall remain open as provided by the Alabama Workers' Compensation Law."[10]
[11] R. Doc. 27-4 at ¶ 3. R. Doc. 40-1 at ¶ 3.
[12] R. Doc. 1. Plaintiff filed an amended complaint On October 21, 2016. R. Doc. 6.
[13] R. Doc. 1 at 3.
[14] R. Doc. 27.

opposition on May 22, 2018,[15] and Defendant filed a reply in support of its motion for summary judgment on May 30, 2018.[16]

## **LEGAL STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17] "An issue is material if its resolution could affect the outcome of the action."[18] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[19] All reasonable inferences are drawn in favor of the nonmoving party.[20] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[21]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[22] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the

---

[15] R. Doc. 33.
[16] R. Doc. 37.
[17] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[18] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[19] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[20] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[21] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[22] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[23]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[24] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[25] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[26] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[27] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must

---

[23] *Celotex*, 477 U.S. at 322–24.
[24] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[25] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980);
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[26] *Celotex*, 477 U.S. at 332–33.
[27] *Id.*

either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[28] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[29]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[30]

## **LAW AND ANALYSIS**

Under Louisiana law, a WC carrier pays medical expenses according to a reimbursement schedule.[31] Fees in excess of this reimbursement schedule are not recoverable against the employee, employer, or workers' compensation insurer.[32] Accordingly, WC carriers often pay a lower price for medical procedures than the amount listed on the patient's bill, and the medical provider is not entitled to recover the unpaid amount from the employee or the WC carrier. The difference between the amount billed by the medical provider and the amount it must accept from the WC insurer to satisfy the

---

[28] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[29] *Id.*; *see also First National Bank of Arizona*, 391 U.S. at 289.
[30] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[31] LA. REV. STAT. ANN. § 23:1034.2.
[32] LA. REV. STAT. ANN. § 23:1034.2(D).

full claim is referred to as the "write-off" amount.[33] Because Chris Limberg's medical care is ongoing, the total amount of medical bills paid by Starr, and, in turn, the total write-off amount, are as-yet undetermined.[34]

Starr moves for summary judgment that Plaintiff may not recover the write-off amount under the UM policy. Whether Plaintiff may recover the write-off amount is contingent upon whether the collateral source rule applies. If the collateral source rule applies, the plaintiff may recover the full value of his medical expenses under the UM policy, including the write-off amount.[35] If the collateral source rule does not apply, however, the plaintiff may not recover the write-off amount; the total amount the plaintiff may recover will be limited to the amount actually paid for medical expenses.[36]

"Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution."[37] The payments a plaintiff receives from an independent source are not deducted from the award the aggrieved party would otherwise receive from the tortfeasor. As the Louisiana Supreme Court explained in *Bozeman v. State*, "[a]s a result of the collateral source rule, the tortfeasor is not able to benefit from the victim's foresight in purchasing insurance and other benefits."[38]

---

[33] *See Bozeman v. State*, 2003-1016 (La. 7/2/04); 879 So. 2d 692-93.
[34] R. Doc. 27-4 at ¶ 3. R. Doc. 40-1 at ¶ 3.
[35] *Bozeman*, 879 So. 2d at 703–06. *See also Griffin v. La. Sheriff's Auto Risk Ass'n*, 1999-2944 (La. App. 1 Cir. 6/22/01), 802 So. 2d 691, 713–15, *writ denied*, 2001-2117 (La. 11/9/01), 801 So. 2d 376.
[36] *Bozeman*, 879 So. 2d at 703–06. Plaintiff admits in his opposition to the motion for summary judgment that Starr is entitled to a credit for any medical expenses paid under the WC policy. R. Doc. 33 at 4.
[37] *Id.* at 698.
[38] *Id.*

There are two primary considerations for determining whether the collateral source rule applies: "(1) whether application of the rule will further the major policy goal of tort deterrence; and (2) whether the victim, by having a collateral source available as a source of recovery, either paid for such benefit or suffered some diminution in his or her patrimony because of the availability of the benefit, such that no actual windfall or double recovery would result from application of the rule."[39] For example, in *Bozeman*, the Louisiana Supreme Court held that Medicaid recipients cannot collect Medicaid write-off amounts as damages because recipients provide no consideration for the Medicaid benefit, and therefore the victim's patrimony has not been diminished.[40] The court concluded that a plaintiff's recovery is limited to what is actually paid by Medicaid.[41]

In *Bellard v. American Cent Insurance Co.*, the UM carrier for the plaintiff's employer sought a credit for disability wage and medical benefits paid by the employer or its WC carrier.[42] Plaintiff's employer was not alleged to be at fault in the accident.[43] The court acknowledged that the third party tortfeasor would not receive any benefit or reduction in liability as a result of the credit and also emphasized that the plaintiff had not given consideration for WC benefits:

> [U]nlike sick leave, annual leave, or employer-provided health insurance, workers' compensation benefits cannot be considered a fringe benefit in the nature of deferred compensation that would otherwise be available to the plaintiff but for his injury. To the contrary, workers' compensation benefits are required by law, and that same law prohibits an employer from assessing an employee, either directly or indirectly, with the cost of workers' compensation insurance.[44]

---

[39] *Lockett v. UV Ins. Risk Retention Grp., Inc.*, 15-166 (La. App. 5 Cir. 11/19/15), 180 So. 3d 557, 570 (citing *Bellard v. Am. Cent. Ins. Co.*, 2007-1335 (La. 4/18/08)); 980 So. 2d 654, 669. *See also Hoffman v. 21st Century N. Am. Ins. Co.*, 2014-2279 (La. 10/02/15); 209 So. 3d 702.
[40] *Bozeman*, 879 So. 2d at 705.
[41] *Id.* at 705–06.
[42] *Id.* at 670.
[43] *Id.*
[44] *Id.*

According to the Louisiana Supreme Court, application of the collateral source rule in such circumstances would allow the plaintiff to receive an undeserved windfall or double recovery.[45] As a result, the Court held the collateral source rule did not apply, and plaintiff was not permitted to recover twice for his medical expenses.[46]

In *Cutsinger v. Redfern*, the Louisiana Supreme Court applied *Bellard* and held that, because the collateral source rule did not apply, a plaintiff's uninsured motorist carrier should be allowed to reduce its payments by the amount of workers' compensation benefits the plaintiff had received. In that case, the Court grounded its decision in the policy goal of tort deterrence. The court explained:

> The collateral source rule exists to prevent the tortfeasor from benefitting from the victim's receipt of monies from independent sources. In this way, the collateral source rule furthers the major policy of tort deterrence. In this case, the tortfeasor is not requesting the credit for workers' compensation benefits paid. The tortfeasor will reap no benefits if the collateral source rule is not applied and the uninsured motorist carrier is allowed to reduce its payments to plaintiff by the amount of workers' compensation benefits she received. The tortfeasor's position will not change whether or not the credit is allowed. Thus, application of the collateral source rule would not further the major policy goal of tort deterrence.[47]

Subsequent Louisiana state cases interpret *Cutsinger* to stand for the proposition that, "when the tortfeasor *is not* the one from whom recovery is sought, tort deterrence is not furthered."[48] For instance, deterrence is not advanced "when an employer's [UM] insurer seeks a reduction in damages for payments made by the employer and/or its [WC] insurer to the injured employee, rather than when it is the tortfeasor or her insurer who seeks the

---

[45] *Id.* at 669.
[46] *Id.* at 670.
[47] *Cutsinger v. Redfern*, 2008-2607 (La. 5/22/09); 12 So. 3d 945, 954.
[48] *Howard v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2017-1221 (La. App. 1 Cir. 2/16/18); 243 So. 3d 4, 9, *writ denied sub nom. Howard v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2018-0435 (La. 5/11/18), 241 So. 3d 1017 (citing *Bellard*, 980 So. 2d at 670-71) (emphasis original).

reduction."[49] Further, "[w]hile it is important to consider whether the plaintiff paid for the collateral source or suffered some diminution in [his] patrimony . . . this consideration alone is not the determinative factor in deciding whether the collateral source rule applies."[50]

As explained above, it is undisputed that Plaintiff was injured in the course and scope of his employment, his employer was not at fault, his medical expenses were paid by his employers' WC carrier, and he is now suing his employer's UM insurer.[51] *Bellard* and *Cutsinger* foreclose Plaintiff's recovery for the write-off amount, as "[t]he collateral source rule has no application in cases where the plaintiff is injured in the course and scope of his employment at the hands of a third party tortfeasor and the employer is without fault."[52]

Plaintiff attempts to distinguish his case from *Bellard* by asserting that he did in fact suffer a diminution of his patrimony sufficient to justify the application of the collateral source rule. His argument is unconvincing.[53] Plaintiff asserts "in negotiating the settlement of his workers' compensation indemnity benefits, [he] accepted a lesser amount than he would otherwise have accepted in order to maintain his entitlement to future coverage for future medical expenses."[54] Plaintiff concedes he continues to receive medical payments, but contends, "in essence, he has given consideration for the collateral source benefit of his workers' compensation coverage of medical expenses accruing after [settlement]" by accepting a lower amount to settle his claim for lost wage benefits.[55]

---

[49] *Id.*
[50] *Id.*
[51] *See supra* notes 4 through 9.
[52] *Bellard*, 980 So. 2d at 670.
[53] *See* R. Doc. 27-4 at ¶5; R. Doc. 40-1 at 2.
[54] R. Doc. 33 at 9.
[55] *Id.* at 10.

Under *Bellard* and its progeny, the collateral source rule does not apply to payments made on behalf of a plaintiff by a WC carrier when the plaintiff sues his employer's uninsured motorist insurer and the employer is not at fault. In this case, Plaintiff concedes that his medical benefits were (and continue to be) paid by his employer's WC insurer, and he seeks to recover the write-off amount from his employer's UM insurer. Plaintiff is not seeking damages from the tortfeasor.[56] As a result, application of the collateral source rule in this case would not serve the goal of tort deterrence. Nor has Plaintiff's patrimony been diminished, as the Louisiana Supreme Court has determined as a matter of law that there is no diminution of an employee's patrimony as a result of the receipt of WC benefits because they are required by law.[57] The terms of Plaintiff's settlement agreement do not change this result.[58]

## CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that Defendant Starr Indemnity & Liability Company's motion for partial summary judgment that Plaintiff Chris Limberg is not entitled to recover the amount written off by his medical providers is hereby **GRANTED**.

**New Orleans, Louisiana, this 11th day of July, 2018.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT COURT**

---

[56] R. Doc. 33 at 3 n.5.
[57] *Cf. Royer v. State, Dep't of Transp. & Dev.*, 16-534 (La. App. 3 Cir. 1/11/17); 210 So. 3d 910, 922 (injured plaintiff's patrimony was not diminished because workers' compensation insurer paid his medical bills).
[58] Even if whether Plaintiff accepted a lesser amount on his indemnity settlement were material, Plaintiff has not created a disputed fact by producing competent summary judgment evidence. Plaintiff has supplied only a conclusory and self-serving affidavit devoid of any facts to support his claim that he could have negotiated a higher amount for his indemnity claim if he had also settled his entitlement to future medical expenses. Nor does the settlement agreement itself contain any facts to support Plaintiff's argument.